IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kevin Newby,          Case No. 3:05CV7385

    Plaintiff,

v.          ORDER

John E. Potter, *et. al.,*

    Defendants.

**Opinion**

Plaintiff Kevin Newby ("plaintiff"), seeking an order to vacate or modify an arbitrator's decision, brings a hybrid action under 39 U.S.C. §1208(b) against defendants, John E. Potter, Postmaster General and the United States Postal Service (collectively referred to as the "Postal Service") and the American Postal Workers Union, AFL-CIO, and the Toledo Area Local, American Postal Workers Union, AFL-CIO, (collectively referred to as the "Union"). Section 1208(b) is the Postal Service analogue to §301 of the Labor-Management Relations Act, 29 U.S.C. §185(a).

Pending are defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, defendants' motions shall be granted.

**Factual Background**

Plaintiff Kevin Newby, formerly employed as a mail processing clerk in Toledo, Ohio, appeals from an arbitrator's dismissal of a grievance filed on his behalf by the Union against the Postal Service. Plaintiff was discharged from the Postal Service on October 22, 2003. On November 5, 2003, the Union

initiated a series of grievances on Newby's behalf that ended in arbitration. On July 8, 2005, the arbitrator dismissed the grievance as untimely appealed by the Union and, thus, inarbitrable.

Plaintiff brings a hybrid claim against the Postal Service and Union to vacate or modify the arbitrator's decision. Pursuant to the Postal Reorganization Act, 39 U.S.C. §1208(b), plaintiff sues the Postal Service for terminating him without "just cause" in violation of the collective bargaining agreement ("CBA") between the Postal Service and Union, and sues the Union for breach of the duty of fair representation. Plaintiff asks this court to reinstate him in his former position with back pay and/or money damages or, alternatively, to order a new arbitration before another arbitrator.

Plaintiff began working for the Postal Service in 1995. In October, 2000, plaintiff pled guilty to attempted forgery and theft (convictions unrelated to plaintiff's employment) and was sentenced to five years community control and probation. Subsequently, plaintiff failed to appear at a community control violation hearing and was, consequently, arrested on a bench warrant. On August 18, 2003, following a hearing in which plaintiff admitted having violated the terms of his community parole, the court revoked his community control and probation and sentenced plaintiff to eleven months in prison, effective immediately.

On August 20, 2003, plaintiff wrote his station manager, Jim Hostetler, requesting an eleven-month leave of absence ("LOA") to accommodate his incarceration. The Postal Service conducted an investigation whereby Hostetler obtained plaintiff's court records, including his guilty plea to charges of attempted forgery and theft and admitted probation violation.

In a letter dated October 7, 2003, Hostetler denied plaintiff's request for a LOA and notified him that his status was "Absent Without Leave" ("AWOL"). Hostetler gave plaintiff an October 20, 2003, deadline to respond to the charge before the Postal Service would make a final decision about

2

termination. Plaintiff failed to timely respond to Hostetler's letter. On October 22, 2003, the Postal Service issued Newby a notice of removal ("NOR") based on a charge of "Unsatisfactory Attendance/AWOL due to Incarceration." The NOR also cited violations of behavior and conduct in reference to plaintiff's underlying criminal convictions.

On November 5, 2003, the Union filed a Step One grievance, the first of a three-step grievance process, to challenge plaintiff's removal from the Postal Service. On November 11, 2003, following an adverse Step One decision, the Union appealed the grievance to Step Two. After receiving an adverse Step Two decision on March 4, 2004, President of the Local, Kenny Terry, forwarded the grievance to the Local's Step Two designee for direct appeal to arbitration.

The Local's Step Two designee missed the thirty-day time limit to appeal the Step Two grievance to arbitration. In its brief, the Union attributes the missed deadline to the designee's "extreme stress" and "medical condition," and notes in its reply brief that these problems "ultimately led to [that person's] removal as an officer in the Local and [that person's] termination from the Postal Service."

In September, 2004, five months after the deadline, Terry realized that plaintiff's grievance had not been timely appealed to arbitration. Union representatives initiated several telephone conversations with Postal Service employee Barbara Petrusky in an unsuccessful attempt to obtain her written agreement to extend the deadline to appeal plaintiff's grievance to arbitration. The record indicates Petrusky, who lacked authority to extend the deadline, never agreed to an extension. Nonetheless, on September 20, 2004, the Union filed an appeal to arbitration. Union representatives later testified at the subsequent arbitration that they believed Petrusky had verbally agreed to an extension.

Arbitration occurred before Arbitrator Margo Newman on April 21, 2005. The parties stipulated the issues to be whether:

3

>1) the grievance was arbitrable due to timeliness;
>
>2) just cause existed to terminate the plaintiff on November 28, 2003, and, if not, what was the appropriate remedy.

At the arbitration hearing, the parties examined and cross-examined witnesses, presented documentary evidence, and argued their positions. Plaintiff attended the hearing. Additionally, Arbitrator Newman allowed the Union to file supplemental cases concerning the issue, raised for the first time at arbitration, of arbitrability.

In her July 8, 2005 decision, the arbitrator held that, under Articles 15.5.A.6 and 15.4B of the CBA, plaintiff's grievance was "untimely appealed to arbitration, making it inarbitrable." She noted that, while "seemingly harsh in a particular case, the parties have specifically agreed that forfeiture of a grievance is the appropriate consequence for untimely processing by the Union."

The opinion accompanying the award included a seven-page discussion of two issues: 1) "whether the Union received a verbal agreement from Petrusky to extend the deadline for filing an appeal to arbitration;" and 2) "whether such agreement, if received, would be valid under the language of the [CBA]." In the last sentence of her discussion, Arbitrator Newman addressed the merits of plaintiff's grievance:

>I feel obliged to note, in passing, that since the parties fully litigated the merits of this case, it is my assessment that the grievance, even if timely, would not have been successful in overturning grievant's removal on either due process grounds or on the merits.

(Doc. No. 1, Ex. A at 22.)

Plaintiff filed his instant complaint to vacate or modify the arbitration award on October 3, 2005. Defendants Postal Service and Union have filed counter-motions for summary judgment.

## Discussion

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 255. A judge's function at the summary judgment stage is not, however, "to weigh the evidence and determine the truth of the matter." *Id.* at 249. Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c).

**A. Hybrid § 1208(b) Claim**

Pursuant to 39 U.S.C. §1208(b) of the Postal Reorganization Act, district courts have jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing the Postal Service employees. . . ." Because this section is the analogue of §301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a), §301 is consistently applied to actions brought under 39 U.S.C. §1208(b). *Bacashihua v. United States Postal Serv.,* 859 F.2d 402, 406 (6th Cir. 1988).

Under §301, when a collective bargaining agreement establishes a mandatory grievance procedure and grants the union the exclusive right to pursue claims on behalf of an aggrieved employee, the results obtained by the union are ordinarily conclusive of the employee's rights under the agreement. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163-164 (1983). An exception to this rule arises when the union "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. In such cases, the employee has standing to sue the union, the employer, or both, "notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* at 164-65.

To prevail against either the union or the company, the employee must prove two "inextricably interdependent" claims: 1) the employer violated the terms of its CBA with the union; and 2) the union breached its duty of fair representation. *Id.* at 164*; Bagsby v. Lewis Bros., Inc.,* 820 F.2d 799, 801 (6th Cir. 1987). Thus, for plaintiff to survive summary judgment, he must set forth evidence as to whether the Postal Service breached the CBA, and he must raise a question of material fact as to whether the Union breached its duty of fair representation.

**a. Breach of the Duty of Fair Representation**

A labor union assumes the duty of fair representation "by seeking and acquiring the exclusive right and power to speak for a group of employees." *Bowen v. United States Postal Serv.,* 459 U.S. 212, 226 (U.S. 1983). This duty requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967).

To prevail on a claim for breach of the duty of fair representation, a plaintiff must show that the union's actions were either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67 (1991). Once a plaintiff establishes that the union acted in bad faith or in an arbitrary or discriminatory manner, he must prove the union's actions tainted the grievance procedure to the extent that the outcome was more than likely affected by the union's breach. *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 585 (6th Cir. 1994). Moreover, the impact of the union's breach on the outcome of the grievance proceeding must have been substantial. *Id.*

Plaintiff contends that the Union breached its duty of fair representation because it: 1) failed to timely appeal his grievance to Step Three arbitration; 2) failed to inform plaintiff until the night before arbitration of the Union's failure to timely appeal; and 3) damaged the credibility of the Union's position during the arbitration by attempting disingenuously to justify its efforts to obtain a verbal extension from Petrusky.

With regard to the untimely appeal to Step Three arbitration, the CBA provides that a demand for arbitration must be mailed within thirty days after the Step Two denial. The Union concedes that it filed no appeal to arbitration for more than five months after the deadline. Plaintiff, however, offers no material evidence to dispute the Union's argument that its failure to timely file was solely attributable to negligence. A claim of breach must be premised on a "union's wrongful refusal to

7

process the grievance." *Vaca,* 386 U.S. at 185. Simple negligence or mistakes in judgment do not constitute a breach of a union's duty of fair representation. *Black,* 15 F.3d at 585.

Moreover, even if the Union's untimely appeal were attributable to arbitrary or perfunctory conduct, plaintiff's argument would fail. Unexplained failure to timely file a grievance may constitute arbitrary conduct, but to constitute breach of the duty of fair representation, the union's inaction must bar access to the labor-management grievance resolution apparatus. *See Vencl v. Int'l Union of Operating Eng'rs Local 18,* 137 F.3d 420, 426 (6th Cir. 1981) (arbitrator dismissed employee's grievance "solely because of untimely filing"); *Ruzicka v. General Motors Corp*, 649 F.2d 1207, 1211 (6th Cir. 1981) (failure to timely file grievance might constitute unfair representation in cases where union's inaction "substantially prejudices" an employee's grievance). In this case, the Union's failure to timely appeal did not substantially prejudice plaintiff's grievance because the Union, despite the untimeliness of the appeal, obtained a full and fair hearing on the merits of the grievance. *Cf. Ruzicka*, 649 F.2d at 1211 (finding possibility of substantial prejudice merely when initial hearing was limited to untimely filing, and which hearing did not address the issue of breach of the collective bargaining agreement).

The Union's failure to inform plaintiff sooner about the missed deadline does not constitute a breach. As in the first instance of alleged Union misconduct, plaintiff offers no evidence that the Union acted arbitrarily, discriminatorily, or in bad faith. Likewise, he presents no evidence that the Union's failure to inform him earlier prejudiced his grievance. *See Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir. 1975) (union's negligence or poor judgment in failing to keep employee informed about the status of his grievance did not constitute breach where there was no wrongful refusal to process grievance).

Regarding plaintiff's contention that the Union's disingenuous testimony at the arbitration constituted a breach of the duty of fair representation, Arbitrator Newman's opinion reveals that she found Petrusky more credible than Union representatives on the issue of the timeliness of the appeal. The record indicates, however, that, although there was no way for the Union to substantiate its claim that Petrusky had granted a verbal extension,[1] the Union, nonetheless, zealously argued plaintiff's grievance. Its representatives testified in a good faith effort to justify an untenable position. Even if the Union would be viewed as having exercised poor judgment at the arbitration, it is not liable for honest, good faith errors in judgment. *Poole v. Budd Co.,* 706 F.2d 181, 184-185 (6th Cir. 1983) ("Union representatives are not to be strictly held to the standards of attorneys.").

For these reasons, summary judgment will be granted in favor of defendant Union with respect to plaintiff's claim that the Union breached its duty of fair representation.

### b. Breach of the CBA

The Postal Service has also moved for summary judgment on plaintiff's claim for breach of the CBA. An employee's ability to maintain a cause of action for discharge in breach of a collective bargaining agreement is predicated on his ability to demonstrate that his union breached the duty of fair representation. *Kassab v. Aetna Indus., Inc.,* 2002 WL 31870319, at *6 (6th Cir.) (Unpublished

---

[1] The Union's position on the appeal's timeliness was untenable because: 1) The applicable CBA provision, Art. 15.2, Step 2(h), did not provide for an extension of time limits even by agreement; 2) the Union never obtained written agreement from Petrusky; 3) Petrusky lacked authority to extend the deadline; and 4) the Postal Service had no past practice of extending the deadline on which the Union might have reasonably relied.

disposition). Hence, the grant of summary judgment in favor of the Union on the representation claim compels the grant of summary judgment in favor of the Postal Service on the contract claim.[2]

Accordingly, summary judgment will be granted in favor of defendant Postal Service with respect to plaintiff's claim for breach of the CBA.

### C. The Arbitrator's Reasoning

The degree of deference that courts should apply when reviewing an arbitration decision is "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of America. Dist. 27, Sub-District 5,* 913 F.2d 1166, 1169 (6th Cir. 1990). Courts are not authorized to review an arbitrator's factual findings or decision on the merits. *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

In the Sixth Circuit, federal courts have no basis to vacate an award unless: 1) the arbitrator exceeded the scope of his authority by resolving a dispute not committed to arbitration; 2) the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing an award; or 3) the arbitrator arguably construed or applied the contract to resolve legal or factual disputes. *Mich. Family Res., Inc. v. SEIU Local 517M,* 475 F.3d 746, 753 (6th Cir. 2007) (citing *Misco*, 484 U.S. at 38-39 and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-510 (2001)).

Plaintiff asserts that this court should vacate or modify the arbitrator's decision because her cursory statement on the merits of his grievance indicates she applied her own notion of industrial justice

---

[2] In any event, based on the conclusion, *supra*, that plaintiff was not substantially prejudiced by the late filing, it would follow that Newby could not prevail on this second component of his hybrid claim. The interrelationship between the two prongs of the hybrid analysis is enhanced in this case because, unlike many other cases, the arbitrator first heard the case fully on the merits before deciding that it was filed in an untimely manner, while also expressing a decision on the merits.

and, thus, that she exceeded her authority. In support, plaintiff points out that the arbitrator cited specific CBA provisions relating to the timeliness issue but cited no CBA provisions in her brief assessment of the merits.

Regardless of the arbitrator's lack of elaboration, she was informed fully of the parties' positions and well aware of the applicable standards for just cause removal under the CBA. The record is also clear that under §511.43 of the Employee Labor Relations Manual, ("ELM") (incorporated into the CBA at Article 10), the Postal Service had discretion to deny plaintiff's request for a LOA, and that under §666.81 and §666.82 of the ELM (incorporated into the CBA by Article 19), the Postal Service had authority to charge plaintiff AWOL. The arbitrator cited these provisions on page four of her opinion.

Moreover, in *United Steelworkers of America v. Enterprise Wheel & Car Corp,* 363 U.S. 593, 598 (1960), the Supreme Court held that there is no general requirement that an arbitrator account to the court for the reasoning behind an award, even where an "ambiguity in the opinion" might lead to "the inference that an arbitrator may have exceeded his authority." The rationale for not requiring arbitrators to give unambiguous reasons for their decisions is to avoid discouraging arbitrators from writing *any* supporting opinions at all, an "undesirable" result "for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." *Id.*

The Sixth Circuit has concluded that, "under the holding of *United Steelworkers of America v. Enterprise Wheel & Car Corp,* an arbitrator is not required to produce any opinion at all, much less one that meets certain supposed considerations of form." *Industrial Mut. Ass'n v. Amalgamated Workers, Local Union No. 383,* 725 F.2d 406, 411 (6th Cir. 1984). Accordingly, the Sixth Circuit has upheld arbitral awards that are unsupported by fully elaborated opinions when not irrational or in direct conflict with the record before the arbitrator. *See id.* (arbitrator failed to recite all of the relevant testimony

11

presented); *Hartco Flooring Co. v. United Paperworkers of Am. , Local 14597,* 2006 WL 2168072, at *5 (6th Cir. 2006) (arbitrator failed to "explicitly discuss" the potential ambiguity between permissive and mandatory rules in determining employee's offense did not mandate discharge).

If parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in their agreement the degree of specificity required. *Green v. Ameritech Corp.,* 200 F.3d 967, 976 (6th Cir. 2000). Plaintiff neither points to a provision in the CBA that required the arbitrator to give a detailed explanation of her award summary nor offers evidence that the arbitrator's just cause determination was irrational or in conflict with the terms of the CBA.

Accordingly, plaintiff's argument that the arbitrator exceeded the scope of her authority is without merit and his request that this court vacate or modify the arbitral decision is denied.

## Conclusion

In light of the foregoing, it is

**ORDERED THAT** the Postal Service's and Union's motions for summary judgment be, and the same hereby are granted.

**So ordered.**

/s/James G. Carr
James G. Carr
Chief Judge